United States District Court
Southern District of New York
——————————————————————————

UNITED STATES OF AMERICA

    - against -        11 Cr. 19 (JGK)

ROBERT E. MCDONALD,      <u>MEMORANDUM OPINION AND</u>
                   <u>ORDER</u>
          Defendant.

——————————————————————————

JOHN G. KOELTL, District Judge:

   The defendant moves to dismiss each count of the indictment
against him.

   "It is well settled that 'an indictment is sufficient if
it, first, contains the elements of the offense charged and
fairly informs a defendant of the charge against which he must
defend, and, second, enables him to plead an acquittal or
conviction in bar of future prosecutions for the same offense.'"
<u>United States v. Alfonso</u>, 143 F.3d 772, 776 (2d Cir. 1998)
(quoting <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974)).  A
motion to dismiss is not an appropriate vehicle for challenging
the sufficiency of an indictment.  A court may not "look[]
beyond the face of the indictment and dr[a]w inferences as to
the proof that would be introduced by the government at trial"
unless the Government has made "a full proffer of the evidence
it intends to present."  <u>Id.</u>

**I.**

Count One of the Indictment charges the defendant with securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. §2.  Count One charges that from at least in or about March 2009, up through and including on or about December 1, 2010, the defendant perpetrated a scheme to defraud by soliciting millions of dollars purportedly for a $100 million purchase by the RAI Entities and certain other related corporate entities of approximately 14 Marriott and Hilton branded hotels (the "Midwest Hotel Portfolio"). (Indictment ("Ind.") ¶ 3.)  The Indictment alleges that, for example, the defendant solicited an individual who invested approximately $1.5 million in return for 200 shares of stock constituting a 20% ownership interest in RAI Inc.  (Ind. ¶ 4.) The Indictment alleges that the defendant made false representations that the RAI Entities and/or related entities had already raised substantial capital assets toward the purchase of the Midwest Hotel Portfolio, that the RAI Entities and/or Related Entities had tens of millions of dollars on deposit at various financial institutions, including J.P. Morgan and Citibank, and that investor funds would be put toward the purchase of the Midwest Hotel Portfolio, while the defendant knew that these representations were false.  (Ind. ¶ 5.)  The Indictment also alleges that the defendant created phony bank

2

statements that he provided to the hotel investor and failed to inform the hotel investor that the defendant had been previously convicted for fraud offenses and was currently under federal supervised release.  (Ind. ¶ 6.)

The defendant challenges Count One on the ground that the 200 shares of stock referred to in Count I do not constitute a "security" under the Securities Exchange Act, and therefore cannot be a basis for a charge under 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5.  As a preliminary matter, the defendant argues that the nature of that transaction is a question of law most properly decided by the Court.  This is correct, but only to an extent.  The interpretation of the term "security" as defined in 15 U.S.C. § 78c(a)(10) is a question of law.  See, e.g., McNabb v. S.E.C., 298 F.3d 1126, 1130 (9th Cir. 2002).  Thus, it may be proper for a court to "determine preliminarily whether or not an item could possibly be a security."  United States v. Rogers, 9 F.3d 1025, 1033 (2d Cir. 1993).  However, if an item could be a security, but there is a factual dispute as to whether it is in fact a security, a defendant is "entitled to have the judge instruct the jury on what a security is and to let the jury decide whether the items at issue were securities."  Id.

At this stage, the Court certainly cannot say that the stock at issue is outside the reach of the Securities Exchange

3

Act as a matter of law.  The defendant has submitted various
documents to the Court describing the stock at issue as
"preferred stock."  (Def.'s Mot., Ex. A ("Stockholders
Agreement") & Ex. B ("Stock Purchase Agreement").)  Although
"the fact that instruments bear the label 'stock' is not of
itself sufficient to invoke the coverage of the Act[]," "most
instruments bearing such a traditional title are likely to be
covered by the definition."  Landreth Timber Co. v. Landreth,
471 U.S. 681, 686 (1985).  The defendant goes to great length to
argue that the "stock" sold in this case lacks the five "usual
characteristics," id. at 686, identified in Landreth.  However,
Landreth made clear that its discussion of those characteristics
related only to "common stock," and that "[v]arious types of
preferred stock may have different characteristics and still be
covered by the Act[]."  Id. at 686 n.2.  The defendant has not
identified any cases holding that preferred stock as a class is
outside the definition of a security in the Securities Exchange
Act, and such a holding would run counter to numerous decisions
applying the securities laws to such shares.  See, e.g.,
Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343
F.3d 189, 193 (2d Cir. 2003); United States v. Gardell, No. 00
Cr. 632, 2001 WL 1135948, at *2 (S.D.N.Y. Sept. 25, 2001).

     In this case, there is no reason to believe that the
preferred shares allegedly sold to the investor were not stock

4

within the definition of the Securities Exchange Act, even if
all of the evidence cited by the defendant is considered.  The
shares were designated "stock," and the investor received stock
certificates.  The defendant purportedly signed a "Notice of
Exempt Offering of Securities" to be filed with the Securities
Exchange Commission.  (Def.'s Mot. Ex. D ("Exemption Notice").)
In that document, the defendant acknowledged that the securities
were equity rather than debt and represented that the issuer of
the securities was "[n]otifying the SEC and/or each State in
which the notice is filed of the offering of securities
described and undertaking to furnish them, upon written request,
in the accordance [sic] with applicable law, the information
furnished to offerees."  (Exemption Notice at 3, 5.)
Additionally, the stock possesses many characteristics typical
of convertible preferred stock, such as voting rights and
priority over common stock.  Although the investor may have
personally negotiated the sale and obtained and exercised more
control than most investors, the Securities Exchange Act covers
privately negotiated transactions and is not limited to passive
investors.  Landreth Timber, 471 U.S. at 692.  Moreover, the
Government has identified various factual disagreements as to
the actual characteristics of the stock, and the Court could not
resolve those factual disputes on a motion to dismiss.

5

The defendant also argues that the "economic realities" of the transaction show that it did not concern a covered security. However, where "the instrument involved is traditional stock . . . [t]here is no need . . . to look beyond the characteristics of the instrument" to determine whether it comes within the statute. Id. at 690. Accordingly, because the Court cannot say as a matter of law that the stock is not "traditional stock," there is no reason at this stage to proceed to any examination of the economic realities of the transaction. Additionally, the Howey test that the defendant seeks to apply "was designed to determine whether a particular instrument is an 'investment contract,' not whether it fits within any of the examples listed in the statutory definition of 'security.'" Id. at 691. The Supreme Court has specifically rejected the use of the Howey test on items other than investment contracts, such as stock and other explicitly listed types of securities. Id. at 692.

The defendant also relies on cases distinguishing between investments and credit agreements for purposes of the Internal Revenue Code. These cases are of limited use in interpreting the definition of security in the Securities Exchange Act. See, e.g., Draper v. United States, 72 Fed. Cl. 409, 412 (Fed. Cl. 2004) (noting that a security under the Securities Act may not be a security under the Internal Revenue Code).

In his supplemental submission, the defendant argues that so much of Count One should be dismissed as relies on subsection (b) of Rule 10b-5, promulgated by the Securities and Exchange Commission ("SEC") pursuant to 15 U.S.C. § 78j(b).  The defendant argues that Count One of the Indictment failed to allege a violation of subsection (b), which makes it unlawful "in connection with the purchase or sale of any security . . . (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading."  The defendant argues that the Indictment fails to allege any false statements.  This argument is frivolous.  The Indictment recited the statutory language for a violation of Rule 10b-5(b) and goes on to detail various misrepresentations by the defendant.  (Ind. ¶¶ 5-7.)

For the reasons explained above, the motion and supplemental motion to dismiss Count One is denied.

## II.

Count Two of the Indictment charges the defendant with wire fraud in violation of 18 U.S.C. § 1343 and 2.  The Count specifically alleges that, after having obtained approximately $1,486,323 from a hotel investor, the defendant caused the hotel investor's funds to be diverted to his own use, including

7

through an interstate wire transfer of approximately $145,000 on or about January 15, 2010 to a Citibank account the defendant maintained in New York, New York.  (Ind ¶ 9.)

The defendant moves to dismiss Count Two on the ground that the wire transaction alleged in the indictment occurred after the alleged defrauding of the investor and thus was not for the purpose of executing the alleged scheme to defraud.  However, this cannot be determined from the face of the indictment.  As the Government notes, use of the wires can bring a fraudulent scheme within the scope of 18 U.S.C. § 1343 if the wire is used to move the fraudulently obtained funds from an account used in the fraud to the perpetrator's personal bank account.  See, e.g., United States v. Powell, 576 F.3d 482, 494 (7th Cir. 2009);  United States v. Gilboe, 684 F.2d 235, 238 (2d Cir. 1982); United States v. Sindona, 636 F.2d 792, 802 (2d Cir. 1980).  This is a plausible interpretation of the events described in the indictment.

Accordingly, the defendant's motion to dismiss Count Two is denied.

### III.

Count Three charges the defendant with mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  It specifically alleges that the defendant, having devised a scheme to defraud, for the

purpose of executing the scheme, caused stock certificates to be sent by Federal Express from New York, New York to a hotel investor.

The defendant contends that Count Three does not allege any mailings for the purpose of executing the scheme to defraud. According to the defendant, the mailing referred to in Count Three occurred after the transaction was completed and was not for the purpose of executing the alleged scheme.

The defendant's position cannot be accepted as the basis for a motion to dismiss.  Use of the mails or a private commercial interstate carrier may bring a fraud within the scope of 18 U.S.C. § 1341 even after the commission of a fraud if, for example, the mailings were used to "lull[] the victims into believing they received the services fraudulently promised," United States v. Slevin, 106 F.3d 1086, 1090 (2d Cir. 1996), or to maintain a perpetrator's "good reputation" with potential victims, Schmuck v. United States, 489 U.S. 705, 711-12 (1989). This specifically includes the provision of receipts to victims of a fraud.  See, e.g., Slevin, 106 F.3d at 1090; United States v. Triumph Capital Grp., Inc., 260 F. Supp. 2d 444, 459-60 (D. Conn. 2002).

The indictment alleges that the scheme continued for nearly a year after the defendant mailed the stock certificates.  In light of this allegation, it is plausible that, as the

Government argues in its brief, the mailings were intended to allay the investor's suspicions or to maintain appearances so that more investors could be obtained.

Accordingly, the defendant's motion is denied as to Count Three.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is **denied**.

SO ORDERED.

Dated:    New York, New York
           May 9 , 2011

                                    John G. Koeltl
                             United States District Judge