United States District Court
Southern District of New York
_____

UNITED STATES OF AMERICA,

        - against -                  11 Cr. 19 (JGK)

ROBERT E. MCDONALD,                    <u>OPINION AND ORDER</u>

                         Defendant.
_____

JOHN G. KOELTL, District Judge:

On July 6, 2011, the defendant, Robert McDonald ("McDonald") was convicted by a jury of one count of securities fraud in violation of 15 U.S.C. §§ 78j (b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2; one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; and one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  McDonald represented himself with the assistance of standby counsel. McDonald timely filed the present motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.  He argues that it was improper and coercive for the Court to instruct the jury "to continue to deliberate to see whether [the jury] can reach a verdict" after a jury poll disclosed a non-unanimous jury.  For the reasons set forth below, McDonald's motion is denied.

## I.

Rule 33 of the Federal Rules of Criminal Procedure states that the trial court may grant a defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 gives district courts "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)). "Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995); United States v. Sattar, 395 F. Supp. 2d 66, 72 (S.D.N.Y. 2005). A district court therefore "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" Ferguson, 246 F.3d at 134 (quoting Sanchez, 969 F.2d at 1414). In short, "[i]t is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'" Sanchez, 969 F.2d at 1414.

## II.

The following facts are undisputed, unless otherwise indicated.

On the morning of July 5th, 2011, the Government and McDonald delivered their closing arguments to the jury in McDonald's trial for securities fraud, wire fraud, and mail fraud. (Trial Tr. 1212-95.) That afternoon, this Court charged the jury. In the course of those instructions, the Court explained to the jury that:

> Each juror is entitled to his or her own opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberation. It is your duty to discuss the evidence. If you have a point of view, and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience. However, you are not to give up a point of view that you conscientiously believe in simply because you are outnumbered or outweighed. You should vote with the others only if you are convinced on the evidence and the facts and the law that is the correct way to decide the case.

(Trial Tr. 1358.)

The Court also charged the jury that "[y]our verdict must be by a unanimous vote of all of you." (Trial Tr. at 1359; see also Trial Tr. at 1360 ("I remind you that your verdict must be unanimous.").) The Court further charged the jury on how to send the Court notes, if needed; how to fill out the verdict sheet; and how to inform the Court that the jury had reached a verdict. (Trial Tr. 1358-1360.) The Court "stress[ed] that no note should give me any indication on any disputed issue or on your verdict." (Trial Tr. 1359.) The Court explained that when

3

the jury reached a verdict, all of the jurors should sign the verdict sheet.  (Trial Tr. 1360.)  At 4:15 p.m. that afternoon, the jury retired to deliberate.  (Trial Tr. 1373.)  At 6:15 p.m., the jury sent the Court a note requesting to stop deliberation for the day and continue the next morning, and the Court granted the request.  (Trial Tr. 1384-85; Court Ex. 9.)

The next day, July 6, 2011, at approximately 9:30 a.m., the jury resumed deliberations.  (Trial Tr. 1384, 139; Court Ex. 10.)  At 11:15 a.m., the Court received a note from the jury stating that "[w]e have reached a verdict on all counts." (Trial Tr. 1398; Court Ex. 11.)  The Court then called the jury into the courtroom, and asked the foreperson if the jury had reached a verdict.  (Trial Tr. 1399-1400.)  The foreperson responded that they had.  (Trial Tr. 1400.)  The Court then received the jury's written verdict sheet, and noted that it was undated.  (Trial Tr. 1400.)  At a side bar conference, the Court told the Government, McDonald, and McDonald's standby counsel that it would "send the jurors back and have them date the verdict sheet in the jury room," and the parties agreed.  (Trial Tr. 1401.)  The Court told the jury that it was "send[ing] you back to the jury room just so you could look at the verdict sheet again and date it."  (Trial Tr. 1402.)

When the jury indicated it was ready with the verdict sheet, the Court called the jury back into the courtroom.

4

(Trial Tr. 1402.)  The foreperson then told the Court that the jury had reached a verdict, and passed the verdict sheet to the Court's deputy clerk.  (Trial Tr. 1403.)  The foreperson then announced, in response to successive questions by the deputy clerk, that the jury had found McDonald guilty on each of the three counts of the indictment.  (Trial Tr. 1403.)  The verdict sheet, signed by all 12 jurors, reflected a unanimous verdict of guilty on each of the three counts. (Court Ex. 12 (verdict sheet); see also Trial Tr. 1408).)

On its own motion, the Court then had the jury polled.  The deputy clerk recited to the jury the verdict, as expressed by the foreperson and the verdict sheet—guilty on all three counts of the indictment—and then asked each individual juror if that was the juror's verdict.  (Trial Tr. 1403-04.)  The first ten jurors polled affirmed that this was their verdict.  (Trial Tr. 1404-05.)  However, the 11th juror polled, when asked if guilty on each of the three counts was her verdict, responded, "[n]o." (Trial Tr. 1405.)  The Court said "[a]ll right" and immediately called a side bar conference without polling the 12th juror. (Trial Tr. 1405.)

At the side bar conference, the Court told the Government, McDonald, and McDonald's standby counsel that it would "send the jurors back to the jury room because they've not reached a unanimous verdict.  All right?"  (Trial Tr. 1406.)  The

5

Government and McDonald's standby counsel both responded,
"[y]es."  The Court also told the parties that it would "tell
the jurors that they should deliberate in light Of all my
instructions to see if they can reach a unanimous verdict," and
that it would provide them with another verdict form because the
current verdict form was no longer good.  (Trial Tr. 1406.)
McDonald said, "[a]greed" and then his standby counsel, and the
Government, also said "[y]es."  (Trial Tr. 1406.)  The Court
also said that the previously returned verdict sheet would be
kept and not returned to the jury room.  McDonald, his standby
counsel, and the Government all agreed.  (Trial Tr. 1406.)

     The Court then told the jury the following:

          Ladies and gentlemen, I will send you back to continue
     to deliberate to see whether you can reach a unanimous
     verdict, in light of all of the instructions that I have
     given you.  And I'll very shortly send back another special
     verdict form or another verdict form for you.  All right?

(Trial Tr. 1407.)  The Court then excused the jury and told them
to follow the marshal to the jury room.

     At noon, the Court received a note from the jury, which
read: "We will continue deliberating.  Could we eat lunch soon?"
(Trial Tr. 1408; Court Ex. 13.)  The Court drafted a response,
which read "I am sending you a new verdict form.  Lunch should
be delivered at about 12:45 p.m."  (Trial Tr. 1409; Court Ex.
14.)  The parties affirmed that the response was satisfactory.

(Trial Tr. 1409.)  All notes from the jury and the notes that were sent by the Court to the jury were provided to McDonald, his standby counsel, and the Government to review.

Shortly thereafter, while the jury continued to deliberate, the Court on its own motion called back the Government, McDonald, and his standby counsel to point out the proposed instruction in Judge Sand's treatise for "after a poll reflects a lack of unanimity." (Trial Tr. 1410.)[1]  Instruction 9-12 provides in full:

> It appears from the answers given during the polling of the jury that your verdict is not unanimous.  I must, therefore, ask that you return to the jury room and continue your deliberations.  The instructions which I previously gave still apply.  Specifically, I remind you that you should discuss and consider the evidence listen to the arguments of your fellow jurors; present your individual views and consult one another.  You should not hesitate to change your views if you are convinced they are erroneous; however, you should not surrender a conscientiously held conviction simply because you may be outnumbered or merely in order to reach a verdict.

Sand, et al., 1 MODEL FEDERAL JURY INSTRUCTIONS 9-48 (2011).  The Court read the entire instruction to the parties, explaining that the first portion of the model instruction, ending in "[t]he instructions which I previously gave still apply," was

---

[1] Judge Sand's treatise suggests that the model instruction "should be given whenever a poll of the jury reveals that the verdict was not unanimous."  Sand, et al., 1 MODEL FEDERAL JURY INSTRUCTIONS 9-48 (2011).

"the substance of what I have told the jury." (Trial Tr. 1410.)
The Court explained it was "not inclined to give at this point"
the second part of the model instruction, which the Court said
it "would describe as a modified Allen charge." (Trial Tr.
1410-11.) The Court said: "I wanted to raise it with the
parties because it's in Judge Sand's instruction and see if any
of the parties had a different view." (Trial Tr. 1411.) The
Government, in response, told the Court that it would not
request that the second part of Judge Sand's instructions be
read at that time because the Court's "original instructions
included similar language about the deliberation process," and
because "in light of the fact that we immediately got a note
back from the foreperson saying we'll continue to deliberate."
(Trial Tr. 1411.) McDonald's standby counsel, after speaking
with McDonald, told the Court that McDonald "agrees that what
the Court has already instructed the jury is sufficient at this
time." (Trial Tr. 1411.)

        At 1:06 p.m., the jury sent the Court a note saying "we
have reached a verdict." (Trial Tr. 1412; Court Ex. 12.) The
Court brought the jury back into the Courtroom, and asked the
foreperson if the jury had reached a verdict. (Trial Tr. 1413.)
The foreperson affirmed that the jury had reached a verdict.
The deputy clerk asked the foreperson to rise, and asked the
foreperson how the jury had found with respect to each of the

                                    8

three counts of the indictment.  The foreperson responded "[g]uilty" to each count of the indictment.  (Trial Tr. 1413.) The foreperson handed the Court the new verdict sheet, which was dated and signed by all of the jurors, and which reflected a unanimous verdict of guilty on each of the three counts of the indictment.  (Trial Tr. 1414.)

On its own motion, the Court had the jury polled again. The deputy clerk asked each individual juror whether guilty on each of the three counts of the indictment was indeed each juror's verdict.  Each of the twelve jurors responded, "[y]es," reflecting a unanimous verdict.  (Trial Tr. 1414-15.)

The Court then called a side bar conference to show the parties the verdict form.  (Trial Tr. 1416.)  At the side bar conference, McDonald told the Court that Ms. Nichols, the juror who had said "no" during the initial, non-unanimous poll, "shook her head as she gave her answer yes" during the latest poll. (Trial Tr. 1416.)  McDonald asked the Court to repoll the jury. (Trial Tr. 1416.)  The Court said that it did not see "[her] head move in any direction like that," but the Court said that it would repoll the jury in response to McDonald's request. (Trial Tr. 1416.)  Again, each juror responded "yes," reflecting a unanimous verdict.  (Trial Tr. 1417-18.)[2]  The Court then

---

[2] The record reflects that, during the repolling, when asked if guilty was her verdict, Mrs. Nichols responded "Yes."  The Court

called another side bar to ask the parties if there was

"[a]nything further before I discharge the jury." (Trial Tr.

1419.)  The parties responded that there was not. (Trial Tr.

1419.)  The Court then discharged the jury. (1420-21.)

In this Rule 33 motion, McDonald advances a single
argument: that the instruction given to the jury after the
initial poll revealed a lack of unanimity was coercive,
improper, and in violation of his right to a fair trial by an
impartial jury under the Sixth and Fourteenth Amendments.

### III.

### A.

The first issue is whether the Court was required to
declare a mistrial once the initial poll revealed a lack of
unanimity.  It is plain that no such mistrial was required, even
if one had been requested, which it was not.  Under Rule 31 of
the Federal Rules of Criminal Procedure, "[i]f [a] poll reveals
a lack of unanimity, the court may direct the jury to deliberate
further or may declare a mistrial and discharge the jury." Fed.
R. Crim P. 31(d).  Accordingly, the Court of Appeals for the
Second Circuit has repeatedly affirmed that district courts may
resume jury deliberation after a poll reveals a lack of

---

then said "I'm sorry?"  Mrs. Nichols then repeated, "Yes."
(Trial Tr. 1418.)

unanimity.  See United States v. Gambino, 951 F.2d 498, 500-502
(2d Cir. 1991) (affirming conviction where a poll revealed that
one of the first seven jurors did not agree with the verdict and
another voted not guilty, and the court subsequently polled the
remaining jurors, and then told the jury to "review the jury
instructions and continue its deliberation"); United States v.
Rastelli, 870 F.2d 822, 835 (2d Cir. 1989) ("[A] district judge
has authority to require redeliberation in cases in which there
is uncertainty, contingency, or ambiguity regarding the jury's
verdict."); see also United States v. Gaton, 98 F. App'x. 61,
64, (2d Cir. 2004) (summary order) ("The jury's responses on the
verdict form were clearly ambiguous.  Having not yet discharged
the jury, the District Court had the authority to require
redeliberation, and we certainly find no error in its doing
so.").

Rule 31, and the law in this circuit, explicitly give
district courts the discretion either to require the jury to
deliberate further or to grant a mistrial in the specific case
in which a poll reveals the jury's lack of unanimity.  Moreover,
it is not the law that any instruction to continue deliberation
is inherently coercive, and that a mistrial is therefore
required, where the court learns the exact breakdown of the
jurors' votes from the nonunanimous poll.  See Gambino, 951 F.2d

11

at 500-502.  It is therefore clear that a mistrial was not required once the jury's lack of unanimity was revealed.

It was particularly appropriate in this case to send the jury back to continue to deliberate after the poll revealed that one juror said the verdict was not hers.  All jurors had already signed the verdict form and the foreperson had announced that the jury had reached a verdict.  It was unclear why one juror did not affirm the verdict that she had recently signed.  Under all the circumstances, no party suggested that any result other than continued deliberations was appropriate.[3]

### B.

The next issue is whether the specific additional instruction given to the jury in this case was improperly coercive "in its context and under all the circumstances." Lowenfeld v. Phelps, 484 U.S. 231, 237 (1988) (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965) (per curiam)); see also Spears v. Greiner, 459 F.3d 200, 205 (2d Cir. 2006).

### 1.

McDonald asserts that the Court's supplemental instruction to the jury was in fact a modified Allen charge.  McDonald then

---

[3] The Court notes the agreement of all the parties not to suggest that there was any waiver or forfeiture of any objections, but rather to note that no party even questioned that further deliberations was plainly the appropriate course at the time.

asserts that a modified Allen charge is "inherently unconstitutionally coercive if it fails to remind jurors not to relinquish their own conscientiously held beliefs." Fong v. Poole, 522 F. Supp. 2d 642, 659 (S.D.N.Y. 2007) (quoting Spears, 459 F.3d at 206) (internal alterations omitted; emphasis in original).

Allen charges are "supplemental instructions given to a deadlocked jury urging them to continue deliberating and for the jurors in the minority to listen to the majority's arguments and ask themselves whether their own views were reasonable under the circumstances." Spears, 459 F.3d at 204-05 (citing Allen v. United States, 164 U.S. 492, 501 (1896)). Most basically, Allen-type charges are those "used to encourage a verdict in the face of a deadlock." Smalls v. Batista, 191 F.3d 272, 278 (2d Cir. 1999). Unlike the original Allen charge, which suggested that "jurors in the minority should reconsider their position," a modified Allen charge does "not contrast the majority and minority positions." Spears, 459 F.3d at 204 n.4; see also Lowenfeld 484 U.S. at 240 (approving of use of modified Allen charge). Nevertheless, because a modified Allen charge still "asks jurors to reexamine their own views and the views of others, . . . [it] introduces the danger that jurors will abandon their conscientiously held beliefs, and thus warrants additional cautionary language" to militate against any

potential coercive effect on the jury.  Spears, 459 F.3d at 204
n.3; see also id. at 204 n.4 ("Due to the potential coercive
effects on jurors in the minority, the Allen charge has been
called the "dynamite charge" because 'like dynamite, it should
be used with great caution, and only when absolutely
necessary.") (internal quotation marks, alteration, and citation
omitted).  The propriety of an Allen-type charge "hinges on
whether it tends to coerce undecided jurors into reaching a
verdict," for example "when jurors are encouraged to abandon,
without any principled reason, doubts that any juror
conscientiously holds as to a defendant's guilt."  Pena v.
Bellnier, 09 Civ. 8834, 2011 WL 3918200, at *14 (S.D.N.Y. Aug.
26, 2011) (quoting United States v. Melendez, 60 F.3d 41, 51 (2d
Cir. 1995).

        The supplemental instruction in this case was not an Allen
charge or a modified Allen charge.  It was simply a request to
the jurors to continue deliberations to see whether a unanimous
verdict could be reached.  In Spears, the Court of Appeals
considered a case in which the jury had indicated to the trial
court that it was deadlocked after a single day of deliberation.
The trial court sent the jury a note explaining that "[Y]ou have
just barely begun your deliberations.  We spent a good deal of
time in selecting the jury and hearing the testimony. Please
give it your full attention. I have a very strong feeling that

                                14

you should be able to reach a verdict." <u>Spears</u>, 459 F.3d at
202.   After a side bar conference, the court then further told
the jury that

> [T]here has been an objection by counsel to my statement
> that a lot of time and money has been expended on this
> case. That shouldn't be part of your consideration. What
> you should consider is what the facts are with the idea,
> with an attempt to reach a verdict if that be possible.
> Based on the very few hours that you have deliberated, I
> tell you that it's far too premature at this point to send
> such a note. Please continue your deliberations with a view
> toward arriving at a verdict if that's possible.

<u>Id.</u>

In holding that this supplemental charge was not coercive,
the Court in <u>Spears</u> noted that it was evaluating the
supplemental charge as a modified <u>Allen</u> charge because the
parties had characterized it as such.   <u>Id.</u> at 204.   However, the
Court of Appeals also noted that "other courts have held that a
'judge's simple request that the jury continue deliberating,
especially when unaware of the composition of the jury's nascent
verdict' cannot be 'properly considered an Allen charge.' <u>Id.</u>
(citing <u>United States v. Prosperi</u>, 201 F.3d 1335, 1341 (11th
Cir. 2000)); <u>see also</u> <u>Fong</u>, 522 F. Supp. 2d at 663 n.7
(supplemental charge in <u>Spears</u> may not have been an <u>Allen</u> charge
at all, because the charge in <u>Spears</u> was "quite different from
the kind of charge discussed in <u>Allen</u> and its progeny").

More recently, the Court of Appeals has held that a
supplemental charge to the jury after a poll revealed a non-

unanimous jury was not a coercive <u>Allen</u> charge because "there
was no 'suggestion that jurors in the minority should reconsider
their position.'" <u>United States v. Stinn</u>, 379 F. App'x. 19, 21-
22 (2d Cir. 2010) (summary order) (quoting <u>Spears</u>, 459 F.3d at
204 n.4).  The "key aspect" of an <u>Allen</u> charge, modified or
traditional, is that the court "asks jurors to reexamine their
own views and the views of others." <u>Spears</u>, 459 F.3d at 204
n.3.

In this case, the Court was notified by the poll of a lack
of unanimity, but not necessarily a deadlock: the jurors had all
signed the verdict sheet indicating a guilty verdict, and their
lack of unanimity only came out during the poll.  More
importantly, there is no indication that the language used here
was calculated to break any deadlock or otherwise encourage a
verdict.  There was no request that jurors in the minority
consider the views of those in the majority, as in a traditional
<u>Allen</u> charge, or even that the jurors consider the views of
other jurors.  Indeed, the record reveals that the Court
specifically declined to give the portion of Judge Sand's model
instruction for a non-unanimous poll which the Court
"describe[d] as a modified <u>Allen</u> charge."  (Trial Tr. 1410-11.)[4]

---

[4] Judge Sand's treatise explicitly likens the language that
the Court declined to give to the jury to an <u>Allen</u> charge.
Sand, et al., 1 MODEL FEDERAL JURY INSTRUCTIONS 9-48-49 & n.4 (citing
Instr. 9-11, "Jury Disagreement and Deadlock (<u>Allen</u> charge)").

McDonald now objects to the instruction: "I will send you back to continue to deliberate to see whether you can reach a unanimous verdict, in light of all of the instructions that I have given you." He argues that this was a coercive instruction urging the juror who indicated disagreement to change her vote. There was no such instruction. The instruction did not even suggest that any juror consider the views of others or persuade other jurors. See Spears, 459 F.3d at 204 n.3.

Whether or not the instruction is characterized as an Allen charge, as McDonald incorrectly does, his argument that the Court was required to remind the jurors not to abandon "their own conscientiously held beliefs," Spears, 459 F.3d at 206, is plainly wrong. McDonald relies on the proposition that "a necessary component of any Allen-type charge requires the trial judge to admonish the jurors not to surrender their own conscientiously held beliefs." Fong, 522 F.Supp.2d at 659 (quoting Smalls, 191 F.3d at 279). McDonald argues that, because the lone dissenter in the initial poll had made herself known in open court, the Court should have given the cautionary, "conscientiously held beliefs" portion of a modified Allen charge, because under the circumstances, the instruction to continue deliberating "to see whether you can reach a unanimous verdict" amounted to an exhortation to the minority juror to reconsider her views in order to reach a unanimous verdict.

17

The Court of Appeals rejected a similar argument in <u>Spears</u>.
In <u>Spears</u>, the district court's supplemental instruction told
the jurors that it had "a very strong feeling that you should be
able to reach a verdict," and then further clarified that the
jury should "continue your deliberations with a view toward
arriving at a verdict if that's possible."  <u>Spears</u>, 459 F.3d at
202.  The <u>Spears</u> Court found that this instruction "did not urge
the jurors to listen to the views of other jurors with whom they
disagreed or attempt to persuade each other," and, therefore,
that the cautionary language regarding jurors' conscientiously
held beliefs was not required.  <u>Id.</u> at 206.  Indeed, <u>Spears</u>
explicitly rejected the argument that there is "a bright-line
rule that a necessary component of any <u>Allen</u>-type charge
requires the trial judge to admonish the jurors not to surrender
their own conscientiously held beliefs."  <u>Id.</u> (internal
quotation marks omitted); <u>see also</u> <u>Rivera v. West</u>, No. 10 Civ.
8496, 2011 WL 3648627, at *7 (S.D.N.Y. Aug. 17, 2011) ("[T]here
is no per se rule that a supplemental charge to a deadlocked
jury without accompanying cautionary language is coercive.").

Here, the Court told the jury to continue to deliberate "to
see whether you can reach a unanimous verdict." (Trial Tr.
1407.)  Here, too, the Court specifically declined to give the
modified <u>Allen</u> charge language from Judge Sand's model
instructions.  (Trial Tr. 1410-11.)  As in <u>Spears</u>, the Court's

18

supplemental charge did not obligate jurors to convince one
another to change their views, or otherwise urge the jurors to
persuade one another.  It therefore was not necessary to remind
the jury to adhere to their conscientiously held views.  See
Spears, 459 F.3d at 206.[5]  While it is true that, unlike in
Spears, the supplemental instruction here came after a
nonunanimous poll in open court, the language used here was if
anything even milder and more neutral than some of the language
used in Spears.  Compare Spears, 459 F.3d at 202 ("I have a very
strong feeling that you should be able to reach a verdict.").

        The Fong decision, on which McDonald relies, is not to the
contrary.  Fong acknowledged that "an Allen charge is inherently
coercive if it both: '(1) obligated jurors to convince one
another that one view was superior to another, and (2) failed to
remind those jurors not to relinquish their own conscientiously
held beliefs.'" 522 F. Supp. 2d at 659 (quoting Spears, 459 F.3d
at 206) (emphasis added); see also Smalls, 191 F.3d at 278.  In
Fong, "both elements [we]re present."  Id.  Judge Lynch found in
Fong that the state trial court had not only encouraged the
jurors to convince one another to change their views, but had
delivered a supplemental instruction replete with "coercive and

---

[5] Here, too, as in Spears, "the original charge . . . did include
cautionary language telling jurors that they had a right to
stick to their arguments and stand up for their own strong
opinions." Spears, 459 F.3d at 206; see Trial Tr. 1358.

19

intimidating language," commentary on the evidence which was "biased against the defense," and "shaming" harangues "harshly attacking [the jurors'] capacity to fulfill their role as jurors." 522 F. Supp. 2d at 660, 663 n.7, 664. At the same time, the state trial court in Fong had not reminded jurors not to relinquish their conscientiously held beliefs. Id. at 659-660. It was the presence of both elements–a highly suggestive, even biased, instruction, combined with a lack of cautionary language reminding the jurors that they were "entitled to stand their ground"–that made for an improper, coercive Allen charge in Fong. Id.; Spears, 459 F.3d at 205 ("[W]hen an Allen charge directs jurors to consider the views of other jurors, specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required"). In this case there was no coercive instruction to the jury. Indeed, there was nothing that resembled a traditional or modified Allen charge. Because the supplemental instruction here did not even suggest that jurors should convince or persuade each other, an instruction to the jury not to abandon their conscientiously held beliefs was not required.

**2.**

"Regardless of how the charge in this case is characterized," this Court must "still analyze it for any

coercive effects . . . in its context and under all the circumstances." Spears, 459 F.3d at 204 n.3 (citing Montoya v. Scott, 65 F.3d 405, 410 (5th Cir. 1995).  In this case, however, an examination of the context and circumstances surrounding the supplemental instruction indicates that there was no improper coercion of the jury.

The language of the supplemental instruction itself was mild, and completely neutral as to whether the jury should or would reach a verdict.  Here, the entire instruction was that "I will send you back to continue to deliberate to see whether you can reach a unanimous verdict, in light of all of the instructions that I have given you." (Trial Tr. 1407.)  This language "did not urge the jurors to listen to the views of other jurors with whom they disagreed or attempt to persuade each other." Spears, 459 F.3d at 206; see also Montoya, 65 F.3d at 410 (instruction to "please deliberate for another 30 minutes to see if you are able to reach an answer to the special issues in accordance with the Court's instructions" was not coercive where it contained none of the explicit "dynamite" language contained in more traditional Allen-type charges); cf. United States v. Rao, 394 F.2d 354, 356 (2d Cir. 1968) ("[T]he judge's charge could not have been interpreted by the jury as indicating any preference for either side.").  Even examining such language from the perspective of the minority juror, cf. Smalls, 191 F.3d

21

at 280-81, the phrase "whether you can reach a unanimous verdict" does not imply that the minority juror must change others' minds or else change hers.  It implies just the opposite: "whether you can" clearly encompasses the possibility that there will <u>not</u> be unanimity.

The fact that the initial poll inadvertently revealed the numerical split of the jury did not render the supplemental charge coercive.  The purpose of a jury poll "is to test the uncoerced unanimity of the verdict" and "eliminate[e] any uncertainty as to the verdict announced by the foreman." <u>Gambino</u>, 951 F.2d at 502 (internal quotation marks and citation omitted).  "One obvious consequence of this process is that the numerical division of the jurors will be revealed in the courtroom. The purpose of the poll is not to interfere with the deliberative process, but rather to ensure that the defendant was convicted by a unanimous verdict."  <u>Id.</u>  It is not per se error to ask the jury to resume deliberation when a poll in open court reveals the jurors preferences.  <u>Id.</u> at 500-02.

It is true that, where the numerical division and preferences of the jurors is made known in open court, a district court should exercise even greater caution in any supplemental instruction.  See <u>Smalls</u>, 191 F.3d at 280; see generally <u>Brasfield v. United States</u>, 272 U.S. 448, 450 (1926) (per curiam).  However, such caution was exercised in this case.

The Court stopped the poll as soon as it revealed a lack of unanimity, saying only "[a]ll right" and then calling the parties to a side bar conference.  (Trial Tr. 1405.)  The Court then asked the jury to continue deliberating "to see whether you can reach a unanimous verdict," and did not indicate that the jurors should convince or persuade each other, or even that a verdict was preferable to a non-verdict.  Revealing a non-unanimous jury in the initial poll did not make an instruction to continue to deliberate coercive in this case.  See Gambino, 951 F.2d at 500-02.

The fact that the jury continued to deliberate after the supplemental instruction supports the non-coercive nature of the instruction to continue to deliberate.  See Spears, 459 F.3d at 206-07 ("[T]he actions of the jury after receiving the modified Allen charge d[id] not support a finding of coercion" where "[t]he jury continued deliberating for the rest of the day, resuming the following morning").  Here, the jury sent an unsolicited note to the Court saying that "[w]e will continue deliberating."  (Trial Tr. 1408; Court Ex. 13).  The jury deliberated for at least an hour after the supplemental instruction.  One hour was a significant amount of time because the jury here had deliberated for less than four hours in total before it rendered its initial, nonunanimous verdict and received the subsequent supplemental instruction.  Moreover,

23

while the initial poll reflected a lack of unanimity, there was not necessarily a true deadlock.  All of the jurors had already signed the verdict form.  Particularly where there may not have been a deadlock to break, the jury's continued deliberation for over an hour suggests that the supplemental charge was not coercive.

Finally, while the defendant's failure to object to the instruction to continue to deliberate does not constitute a waiver of his argument in the present motion, it is indicative of the context and circumstances surrounding the instruction and of the lack of coercion in this case.  See Lowenfield, 484 U.S. at 240 ("We do not suggest that petitioner . . . waived this issue, but we think such an omission indicates that the potential for coercion argued now was not apparent to one on the spot.") (internal citation omitted); Spears, 459 F.3d at 206 ("The fact that defense counsel failed to object to the trial court's revised supplemental charge is also a persuasive factor, much as it was in Lowenfield, in finding that the charge was not improperly coercive.").  Here, the Court gave the defendant and his standby counsel every opportunity to object or otherwise comment on how to handle the non-unanimous poll.  There were no objections.  Indeed, the Court brought to the parties' attention the possible instruction from Judge Sand's treatise that included the modified Allen charge with the cautionary balancing

24

language and no one-including the defendant-asked that it be given. That was a wise decision by the defendant and his standby counsel because the complete instruction from Judge Sand's treatise, unlike the instruction given by the Court, did in fact urge jurors to listen to the arguments of their fellow jurors. McDonald had numerous opportunities to object or otherwise suggest a different course of action. The fact that he did not indicates that no coercion was observed in this case.

Because the Court's instruction to the jury to continue to deliberate was not coercive in light of its context and all of the circumstances, McDonald's motion is denied.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. McDonald's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is **denied**. The Clerk is directed to close **Docket No. 74**.

**SO ORDERED.**

Dated:     New York, New York
           November 22, 2011

_____
John G. Koeltl
United States District Judge